**Jerome W. KILISZEWSKI, Plaintiff,**

v.

**OVERNITE TRANSPORTATION CO., Defendant.**

Civ. A. No. 92–208 Erie.

United States District Court,
W.D. Pennsylvania.

April 13, 1993.

Richard T. Ruth, Erie, PA, for plaintiff.

Matthew W. McCullough, MacDonald Illig Jones & Britton, Erie, PA, W.T. Cranfill, Jr., David L. Terry, Jay L. Grytdahl, Blakeney & Alexander, Charlotte, NC, for defendant.

## MEMORANDUM OPINION

MENCER, District Judge.

Defendant Overnite Transportation (hereinafter "Overnite") has moved for summary judgment in this suit alleging violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* Plaintiff Jerome Kiliszewski began employment with Overnite as a sales representative in March, 1986. Plaintiff asserts that he was a "reliable and highly productive member of the sales force." (Complaint at 7). Plaintiff avers that a new sales manager was appointed in November, 1989, George Davis. Mr. Davis implemented a new sales rating system, negatively rated the plaintiff's performance, and terminated the plaintiff on September 6, 1990. Plaintiff asserts that a younger, less-qualified sales person filled his position.

Mr. Kiliszewski asserts that these acts by Overnite constituted discrimination against him because of his age, and were intended to drive him out as the oldest salesman at the Erie terminal, and replace him with a younger person. He also believes that the stated reasons for discharging him such as "poor sales performance" and "attitude" were pretextual, and as such constitute willful violations of the Age Discrimination in Employment Act. Plaintiff is asking for injunctive relief as well as monetary damages. Defendant Overnite filed the motion for summary

judgment with this court on February 10, 1993.

■■■ The framework of the evidentiary burdens in actions under the ADEA is now well settled. The plaintiff must first establish a *prima facie* case by demonstrating by a preponderance of the evidence that he or she (1) belongs to a protected class, *i.e.* is at least 40 years of age; (2) was qualified for the position; (3) was dismissed despite being qualified; and (4) ultimately was replaced by a person sufficiently younger to permit an inference of age discrimination. *Gray v. York Newspapers, Inc.,* 957 F.2d 1070, 1079 (3d Cir.1992). A *prima facie* case creates an inference of unlawful discrimination. The burden of production then shifts to the defendant-employer who can dispel the inference by articulating a legitimate business reason for discharging the employee. *Id.* If the defendant meets this burden, the plaintiff then must prove by a preponderance of the evidence that the articulated reasons are a pretext for discrimination. Pretext may be proved either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered reason is unworthy of credence. *Id.,* 957 F.2d at 1078. At all times, the plaintiff-employee has the burden of persuading the trier of fact that age was a determinative, though not necessarily the sole, factor in defendant-employer's decision to take an adverse employment action against the employee. *Id.*

The standard for summary judgment is more easily stated than applied. *Williams v. Borough of West Chester, Pa.,* 891 F.2d 458, 459 (3d Cir.1989). "Summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party ... If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed ... In essence ... the inquiry under each standard is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id., quoting Anderson v. Liberty Lobby,* 477 U.S. 242 at 248, 250–52, 106 S.Ct. 2505 at 2510, 2511–12, 91 L.Ed.2d 202 (1986).

The court alluded to the Supreme Court's guidance in *Liberty Lobby* and the Third Circuit's counsel in *Williams* for a purpose. Presently before the court is: 1) Overnite's motion and brief in support of its motion for summary judgment; 2) Kiliszewski's brief in opposition to defendant's motion for summary judgment; 3) Overnite's reply to the plaintiff's response to defendant's motion for summary judgment; 4) Plaintiff's rebuttal to Overnite's reply to the plaintiff's response to defendant's motion for summary judgment; 5) Overnite's surrebuttal to the plaintiff's rebuttal; 6) Plaintiff's rebuttal to Overnite's surrebuttal to the plaintiff's rebuttal.

This volume of evidence on summary judgment must be evaluated in light of *Liberty Lobby's* further directive that:

> Our holding that the clear-and-convincing standard of proof should be taken into account in ruling on summary judgment motions does not denigrate the role of the jury. *It by no means authorizes trial on affidavits.* Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor. Neither do we suggest that the trial courts should act other than with caution in granting summary judgment or that the trial court may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 [106 S.Ct. at 2505, 2513, 91 L.Ed.2d 202 (1986)]. (Emphasis added).

Simply put, following the dictates of the Supreme Court, this court will not conduct a trial on the affidavits, The evidence before the court is clearly such that a reasonable party could return a verdict for the plaintiff. The evidence presents a sufficient disagreement to require submission to a jury, and is not so one-sided that one party must prevail

as a matter of law. *Williams, supra,* 891 F.2d at 460. The record is replete with credibility determinations and the drawing of legitimate inferences from the facts which are jury functions, not those of the judge. *Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. at 2513.

## II. Discussion.

Willy was a salesman. And for a salesman, there is no rock bottom to the life. He don't put a bolt to a nut, he don't tell you the law or give you medicine. He's a man way out there on the blue, riding on a smile and a shoeshine. A salesman is got to dream, boy. It comes with the territory.

Arthur Miller, *Death of a Salesman* (1949).

██ To supplement the accustomed smile and a shoeshine, Overnite in 1989 implemented a system known as the 220 Sales Program, and a sales technique program known as Mastering Sales Fundamentals. Overnite describes the 220 Selling System as a "goal-oriented, organizational tool designed to promote effective time management." It is the evaluation based upon the 220 Selling System and Mastering Sales Fundamentals that Overnite used as its reason for dismissing the plaintiff. The court will observe initially that these two programs could be found in themselves to be pretextual by a rational trier of fact. For instance, the testimony of George Davis, who became the District Manager in charge of the plaintiff in November, 1989, in this regard is enlightening. Upon first meeting plaintiff, Davis observed in writing that "J.K. (plaintiff) is an old-style freight guy." When asked what that meant, Davis replied:

> The reference there is to the style of selling prior to deregulation in 1980, there was more personality selling, a pat on the back type of selling.

> The new program that Overnite was instituting, Mastering Sales Fundamentals, was more of a selling effort that we're trying to get the sales rep to ask for the business, you know, ask and close the business as opposed to a pat on the back and I'll see you next time, I hope you'll give me your freight. (Deposition of Davis at page 69)

In the same deposition Davis testified in reference to the plaintiff that "I guess the leopard can't change its spots, it's very hard ... Q. Did you feel that Jerry was sort of like the leopard that couldn't change his spots? A. Well, yes, and I felt that from day one." These and many other statements in the record, if found credible by a rational trier of fact, could lead to the conclusion that the defendant's articulated reasons are a pretext for discrimination. *Gray v. York Newspapers, supra,* 957 F.2d at 1078.

The record also points to the plaintiff being a significant revenue producer for Overnite over an extended period of time. Plaintiff received an Excellence in Salesmanship award for being one of Overnite's top twenty-five producers nationally during the first and second quarters of 1990. He was the only salesperson from the Erie terminal to be so recognized. Plaintiff led his district for being a Personal Objective Achiever for the Second Quarter of 1990. In addition, George Davis who is now so disparaging of plaintiff's efforts, wrote the following note to Kiliszewski in April, 1990:

> Congratulations and a sincere "job well done" for attainment of your Terminal quota ... For your information, your efforts played a significant role in allowing District 4 to achieve both O/B revenue at 102% of quota and I/B revenue at 100% of quota. Thanks again for a true "Team" effort in March and know that your continued efforts and accomplishments will most certainly "MAKE A DIFFERENCE" in 1990 for Overnite.

Even more telling is the glowing Annual Performance Review given by Davis to Kiliszewski at the end of 1989, a scant eight months before his dismissal. In the review, Davis exudes enthusiasm for plaintiff's performance. He states that:

> I have found Jerry Kiliszewski to be a dedicated, hard-working and refreshingly candid employee, one which I already sincerely believe has the Company's best interest at heart ... the Erie terminal YTD has enjoyed a growth rate of 15.8% Outbound and 13.6% Inbound. Jerry Kiliszewski has contributed largely to this

growth in terms of business savvy and market knowledge. Please approve the salary increase level as requested.

The record abounds with other references to the sales prowess of the plaintiff, if actual sales results are used as a yardstick. Suffice it to say that plaintiff had not reached the Loman-like point in time "when they start not smiling back—that's an earthquake. And then you get yourself a couple of spots on your hat, and you're finished." *Death of a Salesman, supra.* On the contrary, Kiliszewski's customers continued smiling back, and his pat on the back style continued to make money for Overnite. Naturally, a fact-finder may determine that the plaintiff fell short under the new objective of "effective time management" as measured by the 220 Selling System and Mastering Sales Fundamentals. If that is the case, then they will find plaintiff's termination was justified, and no violation of the ADEA will have occurred. On the other hand, a jury may find that the traditional role of a salesperson, namely selling products to the customer, was met in a satisfactory manner by the plaintiff, and any "efficient time management" deficiencies are merely a pretext for discrimination based upon a perceived inability of a leopard to change its spots. Whatever scenario is found credible, there is sufficient "reason to believe that the better course would be to proceed to a full trial." *Anderson v. Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. at 2513. As a result, the defendant's motion for summary judgment will be denied.